United States Bankruptcy Court
Eastern District of Michigan
Southern Division

In re:
Tamica Shante Grissett,                              Case No. 07-41510-R
               Debtor.                      Chapter 7
_____/

Daniel M. McDermott,
               Plaintiff,

v.                                                   Adv. No. 07-4210

Derrick Hills,
               Defendant.
_____/

Opinion Regarding U.S. Trustee's Motion for Summary Judgment
Relating to U.S. Trustee's Motion for Contempt

On March 8, 2007, the U.S. Trustee[1] filed this adversary proceeding against Derrick Hills seeking a permanent injunction for violations of 11 U.S.C. § 110. On October 16, 2007, the Court entered a consent judgment for injunctive relief which prohibited Derrick Hills from acting as a petition preparer as defined by § 110(a)(1).

On November 1, 2007, the U. S. Trustee filed a motion for contempt against Hills alleging that Hills continued to act as a petition preparer after the injunction was entered. Subsequently, the U.S. Trustee filed an amended motion for contempt, a motion for summary judgment on the issue and then an amended motion for summary judgment. Following a hearing on March 17, 2008, the Court concluded that Hills had violated the October 16, 2007 order and entered an interim order

---

1. Since this matter was taken under advisement, Daniel M. McDermott became the U.S. Trustee for this district. Accordingly, he is substituted as plaintiff in this action.

prohibiting Hills from providing any bankruptcy assistance to any assisted persons or prospective assisted persons. On March 26, 2008, the Court conducted a further hearing to determine the appropriate remedy for Hills's violation of the injunction and § 110.

I.

The U.S. Trustee argues that despite the October 16, 2007 order, Hills continued to charge clients for services related to filing bankruptcies. At his deposition on January 18, 2008, Hills refused to answer most of the questions, citing his Fifth Amendment right against self-incrimination. The U.S. Trustee contends that there is no genuine issue of material fact that Hills has violated the injunction.

The U.S. Trustee also contends that Hills is engaged in the unauthorized practice of law by providing legal services and reference material to his clients.

Finally, the U.S. Trustee contends that Hills does not have written contracts with his clients as required by § 528(a)(1).

The U.S. Trustee seeks a finding that Hills is in contempt of the consent judgment and requests that Hills be fined $10,000 for his violation of the order. The U.S. Trustee further seeks an order permanently enjoining Hills from providing any bankruptcy services to individuals, whether he charges a fee or not.

Hills contends that although he continued to provide bankruptcy related services to clients after the injunction, he was not acting as a petition preparer under § 110. Therefore, he did not violate the injunction.

II. Whether Hills Violated the Consent Judgment

The consent judgment prohibited Hills from acting as a petition preparer as defined by § 110(a)(1). Hills contends that he did not act as a bankruptcy petition preparer after October 16, 2007, because he was not filling out the bankruptcy petition and schedules for his clients. He continued to assist clients in filing their bankruptcy petitions, however, his clients filled out the forms and schedules themselves.

11 U.S.C. § 110(a) provides:

> (1) "bankruptcy petition preparer" means a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing; and
>
> (2) "document for filing" means a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title.

11 U.S.C. § 101(a)(1) and (2).

The term "prepares" is not defined in the Code. Webster's Third New International Dictionary (2002) defines "prepare" as "to make ready beforehand for some purpose." Several cases have addressed the issue of whether an individual qualifies as a "petition preparer" under § 110.

In *In re Springs*, 358 B.R. 236 (Bankr. M.D.N.C. 2006), the debtor filed a chapter 7 petition and indicated at his 341 meeting that he was assisted in the preparation of his bankruptcy schedules by a company known as Clarence Williams Entertainment. The debtor stated that he met Williams at a party and, after discussing his financial difficulties with Williams, Williams told the debtor that he had a computer program and instruction manual that would enable the debtor to file a bankruptcy petition. The debtor went to Williams' residence and used the computer program and manual to

3

complete his petition and schedules. In finding that Williams was acting as a petition preparer, the court stated:

> While Mr. Williams did not himself type the Debtor's petition and other bankruptcy documents, he still meets the statutory definition of a "bankruptcy petition preparer." First, it was Mr. Williams' computer that the Debtor used to type and print the petition and accompanying documents. Second, it was Mr. Williams' instruction manual and computer software that enabled the Debtor to complete the documents. Third, it was Mr. Williams' advice to the Debtor that enabled him to complete significant portions of the schedules and related documents.

*Id.* at 241.

In *In re Jolly*, 313 B.R. 295 (Bankr. S.D. Iowa 2004), the debtors paid the respondents $195 for the "Alpha Chapter 7 Bankruptcy Kit." The kit provided step-by-step instructions, advice, and examples of how to complete the documents for a chapter 7 bankruptcy case. The kit provided information regarding: what was dischargeable and nondischargeable debt; reaffirmation agreements; avoiding liens; redeeming mortgaged property; the distinction between purchase money liens, possessory liens, and judicial liens; child support provisions; the automatic stay; notice requirements of the Bankruptcy Code and Rules; case citations; and Bankruptcy Code citations. The kit also advised debtors regarding exemptions. *Id.* at 299.

In concluding that the respondents were acting as petition preparers, the court stated:

> The fact that the person does not place the date and numbers on the form does not excuse that person from advising the court of their participation in the process of preparing the documents for filing with the bankruptcy court. Neither does the fact that the person provides these services by computerized services excuse that person from revealing that person's role in the preparation of the documents.
> This court concludes that "preparation" of a document includes both

4

> the physical preparation and the dictation or the determination of the information to be placed on the document by the "preparer."
>
> * * * *
>
> This court finds the record supports a finding that by specifically instructing Debtors as to the information to be provided on the documents, Respondents "prepared" Debtor's "documents." As such, Respondents are "bankruptcy petition preparers" as that term is defined in 11 U.S.C. § 110.

*Id.* at 300-01. *See also In re Thomas*, 315 B.R. 697, 703-04 (Bankr. N.D. Ohio 2004) ("'[P]reparation' goes beyond the physical typing or mere printing of the documents.").

It is clear enough that after entry of the consent judgment, Hills no longer physically filled out his clients' petition. However, the record overwhelmingly establishes that Hills continued to meet with clients, provide blank bankruptcy forms for them to fill out, provide them use of his computer for internet research, advise them regarding exemptions, submit their papers to the bankruptcy court, provide consulting services, provide copies of sample petitions completed by an attorney, answer questions and explain the bankruptcy process. These services are plainly the very services provided by a petition preparer under § 110 and are therefore prohibited by the consent judgment. Accordingly, the Court concludes that Hills violated the consent judgment.

### III. Whether Hills Violated 11 U.S.C. § 110(e)(2)

11 U.S.C. § 110(e)(2)(A) prohibits a bankruptcy petition preparer from offering any legal advice to a debtor. That section provides:

> (2)(A) A bankruptcy petition preparer may not offer a potential bankruptcy debtor any legal advice, including any legal advice described in subparagraph (B).

5

> (B) The legal advice referred to in subparagraph (A) includes advising the debtor--
>
>> (i) whether–
>>> (I) to file a petition under this title; or
>>> (II) commencing a case under chapter 7, 11, 12, or 13 is appropriate;
>>
>> (ii) whether the debtor's debts will be discharged in a case under this title;
>>
>> (iii) whether the debtor will be able to retain the debtor's home, car, or other property after commencing a case under this title;
>>
>> (iv) concerning--
>>> (I) the tax consequences of a case brought under this title; or
>>> (II) the dischargeability of tax claims;
>>
>> (v) whether the debtor may or should promise to repay debts to a creditor or enter into a reaffirmation agreement with a creditor to reaffirm a debt;
>>
>> (vi) concerning how to characterize the nature of the debtor's interests in property or the debtor's debts; or
>>
>> (vii) concerning bankruptcy procedures and rights.

11 U.S.C. § 110(e)(2).

Although these actions were prohibited as a matter of caselaw previously, the BAPCPA amendments have explicitly detailed them in this section. This has provided bankruptcy petition preparers greater notice of what constitutes the unauthorized practice of law. However, the statutory list is neither exclusive nor exhaustive. Rather, it is a set of examples explaining what constitutes legal advice. *In re Bernales*, 345 B.R. 206, 214-15 (Bankr. C.D. Cal. 2006). "By prohibiting the offering of 'legal advice,' 11 U.S.C. § 110(e)(2) must be understood as a general prohibition against

6

the practice of law by bankruptcy petition preparers, except where otherwise permitted by applicable law." *Id.* at 215. *See also In re Boettcher*, 262 B.R. 94, 96 (Bankr. N.D. Cal. 2001).

Defining the unauthorized practice of law pursuant to § 110, the court in *In re Bush*, 275 B.R. 69 (Bankr. D. Idaho 2002), stated:

> [A] bankruptcy petition preparer cannot assist the debtor in completing forms, provide legal advice that would assist a prospective debtor in making determinations as to which type of bankruptcy to file or which exemptions to take, or direct clients to particular legal publications or specific pages so that they can attempt to find legal answers on their own. The very act of directing a prospective debtor to review a particular section of a legal book in and of itself constitutes legal advice. By focusing on one answer and excluding others, the bankruptcy petition preparer steps over the line.

*Id.* at 78-79.

Likewise, the court in *In re Guttierez*, 248 B.R. 287 (Bankr. W.D. Tex. 2000), explained:

> So what does § 110 tacitly permit? The answer in a nutshell is "not much." Section 110 itself proscribes virtually all conduct falling into the category of guidance or advice, effectively restricting "petition preparers" to rendering only "scrivening/typing" services. Anything else-be it suggesting bankruptcy as an available remedy for a debtor's financial problems, merely explaining how to fill out the schedules, or answering questions about exemptions or whether a claim is or is not secured will invariably contravene either state laws proscribing the unauthorized practice of law or other more specific provisions of § 110. The only service that a bankruptcy petition preparer can safely offer and complete on behalf of a pro se debtor after the enactment of § 110 is the "transcription" of dictated or handwritten notes prepared by the debtor prior to the debtor having sought out the petition preparer's service. Any other service provided on behalf of the debtor by a non-attorney (even telling the debtor where the information goes on the form) is not permitted under state unauthorized practice of law statutes, and so is also not authorized by § 110.

*Id.* at 297-98 (footnotes omitted).

These cases make it abundantly clear that providing anything more than typing services is prohibited under § 110.

At Hills's deposition on January 18, 2008, he acknowledged that he provided consultation services to his clients. (Tr. at 22.) He refused to elaborate as to what those consultation services consisted of, instead invoking his Fifth Amendment right against self-incrimination. Hills also stated that he used reference materials when he assisted his clients. (Tr. at 18.) Hills stated that he provided clients with a sample of a petition and schedules that had been completed and filed by an attorney. (Tr. at 69.)

The U.S. Trustee submitted a Declaration for Debtors without an Attorney for several of Hills's clients. (See Motion and Mem. for Summ. J., Ex. C.) Each declaration bears a statement by the debtor that although Hills did not fill in the bankruptcy documents, he did provide consulting services, blank bankruptcy forms, a pen, calculator, a sample of bankruptcy papers prepared by a lawyer, and reference material which was used by the debtor to prepare his or her own petition.

By providing completed bankruptcy petitions prepared by an attorney, Hills is, in effect, communicating to his clients that the completed petitions are correct and should be followed. He further provided legal information to the clients in the form of reference materials and personal consultation, so that they could prepare their documents. This is prohibited under § 110.

The U.S. Trustee also provided excerpts of transcripts from the meetings of creditors of several of Hills's clients. (See Motion and Mem. for Summ. J., Ex. D.) At her meeting of creditors, Barbara Early stated that she arranged to meet Hills at the library. She spent five hours with Hills going over all of her paperwork, after which Hills assisted her in preparing her petition and

8

07-04210-mar    Doc 90    Filed 10/08/08    Entered 10/08/08 13:19:47    Page 8 of 17

schedules. (Ex. D at 2.)

At their meeting of creditors, Anthony and Alysa Hardy stated that Hills tried to help them understand the paperwork and when they came to a problem he would tell them what it meant in layman's terms. They further stated that Hills told them how to fill out the paperwork. When asked if Hills directed them to the internet, they replied that his assistance was mostly verbal. (Ex. D at 4-5.)

Other debtors gave similar testimony at their meetings of creditors:

Leslie Ann Harris stated that Hills answered her questions and explained to her how bankruptcy worked. (Ex. D at 11.)

Dana Mabins stated that Hills told her what bankruptcy section numbers to put on the form to indicate what exemptions she was claiming. (Ex. D at 17.)

Cherlynn Rhinehart also stated that Hills provided the code sections for her exemptions. (Ex. D at 10.)

Philip and Donna May Thompson stated that Hills told them how to fill out the paperwork and where to file it. (Ex. D at 24.)

This uncontraverted evidence establishes that Hills' conduct violated § 110. As noted above, a petition preparer is prohibited from advising the debtor "concerning how to characterize the nature of the debtor's interests in property." Hills is in clear violation of this provision.

This evidence also establishes that Hills violated the provision of § 110 prohibiting him from advising debtors "concerning bankruptcy procedures and rights." In *In re Hennerman*, 351 B.R. 143 (Bankr. D. Colo. 2006), the court explained this provision:

> The prohibition on giving advice, "concerning bankruptcy procedures

and rights" is extraordinarily broad. A plain meaning reading of this clause precludes advising debtors about forms, timelines, what may or may not occur in the case, whether debtors might be able to avoid liens under 11 U.S.C. § 522(f)(1), cramdown rights, redemption rights, structuring of Chapter 13 plans, or virtually any other substantive or procedural issue in a consumer bankruptcy. Virtually any exercise of discretion about what to include or not include in the bankruptcy documents, will touch upon a bankruptcy "procedure" or "right." This clause represents a catchall provision which leaves little room for a bankruptcy petition preparer to do anything beyond . . . typing and copying tasks. . . .

*Id.* at 151-52 (footnote omitted).

### IV. Whether Hills Violated 11 U.S.C. § 528(a)(1)

11 U.S.C. § 528(a)(1) provides:

(a) A debt relief agency shall–

(1) not later than 5 business days after the first date on which such agency provides any bankruptcy assistance services to an assisted person, but prior to such assisted person's petition under this title being filed, execute a written contract with such assisted person that explains clearly and conspicuously--

(A) the services such agency will provide to such assisted person; and

(B) the fees or charges for such services, and the terms of payment;

11 U.S.C. § 528(a)(1).

A bankruptcy petition preparer falls within the definition of a "debt relief agency." 11 U.S.C. § 101(12)(A).

At his deposition, Hills stated that he did enter into written contracts with his clients. (Tr.

at 5-11.) However, he did not have copies of any of the contracts; he did not recall which clients he had contracts with; and he did not have a copy of a blank contract to provide to the U.S. Trustee. (Tr. at 4-11.) Further, none of the clients questioned regarding contracts at their meetings of creditors had written contracts. Dana Mabins stated that Hills never gave her a written contract. (Ex. D at 15.) Philip and Donna May Thompson also stated that they did not have a contract with Hills. (Ex. F at 2.)

Accordingly, the Court concludes, that despite Hills unsupported statement, the record overwhelmingly establishes that Hills did not enter into written contracts with his clients as required by § 528(a)(1).

## V. Remedy for Violations

Several provisions of § 110 provide remedies for violations of that section. Section 110(i)(1) provides:

> If a bankruptcy petition preparer violates this section or commits any act that the court finds to be fraudulent, unfair, or deceptive, on the motion of the debtor, trustee, United States trustee (or the bankruptcy administrator, if any), and after notice and a hearing, the court shall order the bankruptcy petition preparer to pay to the debtor--
>
> (A) the debtor's actual damages;
>
> (B) the greater of--
>
> (i) $2,000; or
>
> (ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and
>
> (C) reasonable attorneys' fees and costs in moving for

11

> damages under this subsection.

11 U.S.C.A. § 110(i)(1).

The language of this subsection is mandatory. The Court has found that Hills violated § 110(e)(2) by providing legal advice to his clients. Further, the unauthorized practice of law constitutes a fraudulent, unfair and deceptive act for purposes of § 110(i). *In re Langford*, 2007 WL 3376664, *9 (M.D.N.C. Nov. 2, 2007); *In re Moore*, 283 B.R. 852, 857 (Bankr. E.D.N.C. 2002).

At the hearing, the U.S. Trustee identified 79 debtors who were clients of Hills and whose cases were filed after the consent judgment. (Ex. 1 and 2.) Hills has submitted nothing that establishes otherwise. Accordingly, pursuant to § 110(i)(1)(B), Hills will be ordered to pay each of these debtors $2,000.

Pursuant to 11 U.S.C. § 110(h)(3)(B), "All fees charged by a bankruptcy petition preparer may be forfeited in any case in which the bankruptcy petition preparer fails to comply with this subsection or subsection (b), (c), (d), (e), (f), or (g)." The record establishes that Hills charged $250 for each bankruptcy case. The U.S. Trustee's request that these fees be ordered refunded to each of the debtors will be granted.

Pursuant to 11 U.S.C. § 110( l )(1), "[a] bankruptcy petition preparer who fails to comply with any provision of subsection (b), (c), (d), (e), (f), (g), or (h) may be fined not more than $500 for each such failure." The trustee has requested a $500 fine for each of the 79 cases, which is a total of $39,500. The Court however concludes that a fine of $10,000 is a sufficient sanction for Hills' conduct in these cases.

The U.S. Trustee has requested $10,000 for costs associated with pursuing this case. There is no provision in § 110 for costs and attorney fees to the U.S. Trustee. Section 110 (i)(2) provides,

"If the trustee or creditor moves for damages on behalf of the debtor under this subsection, the bankruptcy petition preparer shall be ordered to pay the movant the additional amount of $1,000 plus reasonable attorneys' fees and costs incurred." The U.S. Trustee is not included in this provision. Further, § 110(l)(4) provides for any fine to be paid to the U.S. Trustee and the Court has already awarded $10,000 to be paid to the U.S. Trustee under this provision. Accordingly, the U.S. Trustee's request for its costs is denied.

The U.S. Trustee seeks to permanently enjoin Hills from providing any goods or services related to bankruptcy.

11 U.S.C. § 110(j) provides:

> (2)(A) In an action under paragraph (1), if the court finds that--
>
>> (i) a bankruptcy petition preparer has--
>>
>> (I) engaged in conduct in violation of this section or of any provision of this title;
>> (II) misrepresented the preparer's experience or education as a bankruptcy petition preparer; or
>> (III) engaged in any other fraudulent, unfair, or deceptive conduct; and
>>
>> (ii) injunctive relief is appropriate to prevent the recurrence of such conduct,
>> the court may enjoin the bankruptcy petition preparer from engaging in such conduct.
>
> (B) If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, has not paid a penalty imposed under this section, or failed to disgorge all fees ordered by the court the court may enjoin the person from acting as a bankruptcy petition preparer.

13

11 U.S.C. § 110(j).

"Subsection 110(j) was intended to provide an injunctive remedy to prospectively address abusive conduct by petition preparers." *In re Hennerman,* 351 B.R. at 156.

Hills has demonstrated by his conduct that he is incapable of respecting either the limits of the law or the consent judgment to which he agreed. In these circumstances, to protect the public from his unlawful conduct, it is necessary and appropriate to invoke this Court's authority under §§ 105 and 110 to permanently enjoin Hills from providing any goods or services in any way related to bankruptcy.[2]

### VI. Prohibiting Hills from Appearing in Intake

The U.S. Trustee also seeks to have Derrick Hills permanently enjoined from entering, or enlisting anyone else from entering on his behalf, the office of the Bankruptcy Clerk, and specifically the intake department. This extraordinary relief is sought primarily due to Hills' conduct in the intake department and his behavior toward the staff of the intake department. In February of 2007, at the request of the Clerk of the Court, a Court Security Officer (CSO) began accompanying Hills on each of his visits to the intake department. Hills states that continued access to the intake department is necessary in order for him to look at files and obtain case information from the PACER computer system.

This issue could not be resolved on summary judgment, so the Court conducted an evidentiary hearing, at which several of the intake staff members testified regarding their interactions with Hills. Jamie Laskaska, an intake employee, testified that Hills continued to appear

---

2. This injunction is subject to the modification that the Court approved in an order entered on May 6, 2008, upon the agreement of the U.S. Trustee.

in intake after the injunction. She stated that Hills is hostile toward her and quick to snap and make accusations. Laskaska testified that Hills goes out of his way to require more work from the intake department and that he constantly questions intake policies and tests the limits. Laskaska testified that on one occasion Hills did not have the required fees for copies. He became loud and agitated in an argument with Laskaska and told her that he would haunt her until she retired. On another occasion, Laskaska stated that Hills had a verbal altercation with another co-worker and when she tried to diffuse the situation, Hills told her that she thought he was just an angry black man, and that was what was wrong with the white women in the intake department. Laskaska stated that she felt intimidated and fearful as a result of Hills' conduct.

Cheryl Boggs, operations manager, testified that Hills told her that the intake staff was a bunch of snitches and that that punk-a__ Paul Randel would be taken care of.

Beverly Lomax, operations supervisor for intake, stated that she has had to diffuse the situation between Hills and intake staff. She stated that Hills has used profanity toward her and in a phone message he left for her. She indicated that all seven of the intake employees have apprehension regarding Hills and several of them have a fear of interacting with him. Lomax testified that this apprehension and fear stems from Hills's erratic and unpredictable behavior if things do not go his way. When asked if she believes there is a need for Hills to be escorted to intake, she stated that she did due to the intake staff's apprehension regarding Hills.

Nina Cotton, an intake staff member, stated that she requested that a CSO accompany Hills to intake because Hills had a tendency to argue with the intake clerks and cause them to be stressed. She stated that Hills would "get smart" with the clerks and argue with them. She further testified that it would make her nervous because she was worried that he would "go off" on her. She stated

that Hills regularly reached over the counter to get white-out or a pencil, or to get his documents back. She felt that if he was escorted by a CSO it would alleviate the problem. She stated that Hills's presence and behavior caused stress in the clerk's office.

Marie Trent, an intake staff member, stated that she has seen Hills exhibit threatening behavior towards other intake employees.

Shelley Grasel, an intake staff member, stated that she reported Hills to her supervisor following an altercation in October, 2007 which started because she told Hills she did not have any white-out for him to use. Grasel stated that during the confrontation she felt intimidated because Hills was becoming loud. She stated that Hills was condescending to her and made her feel belittled. Further, he was demanding in his tone of voice.

Melisande Noel, an intake staff member, stated that she has heard Hills become loud and agitated. She stated that she has felt concern for the health and safety of her co-workers because of Hills's behavior. She further indicated that Hills's behavior has changed since the CSO's began escorting him; he now comes in, submits his papers and leaves.

Katherine Gullo, Clerk of the Court, stated that Hills has had a negative impact on the intake department and increased the stress level. She stated that after meeting with the staff in February, 2008, she decided that it would be necessary for Hills to have a CSO accompany him to intake. She stated that since Hills has been escorted, it has reduced the conflict. Further, it has eased staff concerns to know that a CSO is there. However, she stated that there are lingering concerns and a certain level of fear. She testified that Hills has a tendency to become agitated if his requests cannot be complied with. She believes it is necessary to bar Hills from intake to maintain order and relieve staff concerns. Although the situation has improved, Gullo stated that there is the residual effect of

his behavior. She testified that employees are nervous and uncomfortable in his presence.

The Clerk's office is a public office and filed papers are "public records and open to examination by an entity at reasonable times[.]" 11U.S.C. § 107(a). Accordingly, a person's right to examine these public records can be infringed only when that person's conduct impairs clerk's office functions, and the infringement must be the least restrictive that will restore the operations of the office.

The Court concludes that the record does not support prohibiting Hills from appearing in intake. Rather, the record demonstrates that when Hills is accompanied by a court security officer, the clerk's office can maintain normal functions. Accordingly, as a condition of entry to the clerk's office, Hills will be required give the Chief Judge of the Bankruptcy Court three days' notice of his intent to enter intake so that appropriate arrangements for an escort can be made. The Court concludes that this is the least restrictive injunction that will address the concerns of the clerk's staff and the U.S. Trustee, as well as the burden on the court security officers, while also respecting Hills's right to access court files.

The Court will enter an appropriate order.

For Publication

**Signed on October 08, 2008**

                                                   **/s/ Steven Rhodes**
                                               **Steven Rhodes**
                                               **Chief Bankruptcy Judge**